UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| SILVIO AZZOLINI, on behalf of himself and all others similarly situated,<br><br>         Plaintiff,<br><br>V.<br><br>CORTS TRUST II FOR PROVIDENT FINANCIAL TRUST I, et al.,<br><br>         Defendants. | Lead Case No. 1:03-CV-1003<br><br>CLASS ACTION<br><br>MDL Case No. 1:03-MD-1552<br><br>Judge Curtis L. Collier |

| | |
|---|---|
| HARRIET BERNSTEIN, on behalf of herself and all others similarly situated,<br><br>         Plaintiff,<br><br>V.<br><br>CORTS TRUST FOR PROVIDENT FINANCING TRUST I, et al.,<br><br>         Defendants. | Case No. 1:03-CV-1005<br><br>CLASS ACTION<br><br>MDL Case No. 1:03-MD-1552<br><br>Judge Curtis L. Collier |

## MEMORANDUM

The Judicial Panel on Multidistrict Litigation ("JPML") has assigned to this Court a number of putative class action lawsuits against Defendant UnumProvident Corporation ("UnumProvident") and various of its directors, officers, and employees. For purposes of efficient case management, the Court consolidated several of the cases and then grouped the cases into two broad categories by subject matter. The first such category is comprised of a number of putative class actions alleging

1

improper denial of disability insurance benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), and applicable state law (collectively "Coordinated Benefits Actions"). The second category includes various putative securities fraud class action lawsuits brought on behalf of purchasers of UnumProvident securities, two consolidated putative class actions brought on behalf of UnumProvident employees participating in the company's 401(k) plan and alleging violations of various fiduciary duties under ERISA, and a consolidated shareholder derivative action asserting claims on behalf of UnumProvident against certain of its officers and directors (collectively "Securities Related Actions").

Now before the Court is a motion to dismiss filed by the various defendants in the above-captioned putative securities fraud class actions who were involved in the issuing and underwriting of certain corporate-backed trust securities ("CorTS") through initial public offerings in early 2001. The Court has previously ruled upon motions to dismiss securities fraud claims asserted by these and other plaintiffs against UnumProvident and certain of its current and former officers and directors (collectively, "UnumProvident Defendants") (*see* Case No. 1:03-CV-49, Court File Nos. 146, 147; *Azzolini* Court File Nos. 46, 47; *Bernstein* Court File Nos. 56, 57). The instant Memorandum and accompanying Order address "The SSB Defendants' Motion to Dismiss Counts I, II and III of the Amended *Bernstein* Class Action Complaint and the Third Claim for Relief of the Amended Consolidated *Azzolini* Class Action Complaint" (*Azzolini* Court File No. 19; *Bernstein* Court File No. 29). Because these two actions rely on a common basis of underlying factual allegations and because the defendants have filed a consolidated motion to dismiss both complaints, the Court will similarly announce its ruling in a single Memorandum and Order. In ruling on this motion, the Court has considered the supporting memorandum of law filed by the SSB Defendants

2

(*Azzolini* Court File No. 20; *Bernstein* Court File No. 30) (hereinafter, "SSB Memo"), the joint response in opposition filed by Plaintiffs (*Azzolini* Court File No. 45; *Bernstein* Court File No. 55) (hereinafter, "Plaintiffs' Response"), and the reply brief filed by the SSB Defendants (*Azzolini* Court File No. 34; *Bernstein* Court File No. 45) (hereinafter, "SSB Reply").

After considering the arguments of counsel and the applicable law, the Court, for the following reasons, will **GRANT IN PART** and **DENY IN PART** and **RESERVE RULING IN PART** on SSB Defendants' Motion to Dismiss Counts I, II and III of the *Bernstein* Amended Complaint and Count III of the *Azzolini* Amended Consolidated Complaint (*Azzolini* Court File No. 19; *Bernstein* Court File No. 29). Further, the Court will **GRANT IN PART** and **DENY IN PART** the Plaintiffs' requests for leave to amend.

## I. RELEVANT FACTS

Defendant Salomon Smith Barney, Inc. ("SSB") is an international brokerage and investment banking firm with its principal place of business located in New York, New York and a subsidiary of Citigroup, Inc. ("Citigroup"). Defendant Salomon Smith Barney Holdings, Inc. ("Holdings") is a holding company apparently created by SSB and is also a subsidiary of Citigroup. Defendant Structured Products Corporation ("SPC") is a Delaware corporation and wholly owned subsidiary of Holdings created for the purpose of issuing and selling corporate-backed trust securities ("CorTS"). Defendants CorTS Trust for Provident Financial Trust I ("CorTS Trust I") and CorTS Trust II for Provident Financial Trust I ("CorTS Trust II") are both New York trusts established by SPC for the purpose of disseminating CorTS certificates backed by UnumProvident securities. These assorted entities are hereinafter collectively referred to as "the SSB Defendants."

3

Pursuant to initial public offerings on or about January 31, 2001, and on or about April 18,

2001, the Underwriter Defendants caused to be issued securities in two distinct trusts, CorTS Trust

I and CorTS Trust II. The assets of each trust consisted entirely of debentures issued by

UnumProvident. UnumProvident is a Delaware corporation with its principal place of business in

Chattanooga, Tennessee. UnumProvident is the parent company of a number of insurance

companies operating throughout the United States and abroad. Through its subsidiaries, the

company provides a wide range of group and individual insurance products including disability

insurance, life insurance, long-term care insurance, and payroll-deducted voluntary benefits plans

offered by employers to their employees. On May 8, 2003, Silvio Azzolini filed a putative securities

fraud class action lawsuit of his own in the United States District Court for the Southern District of

New York on behalf of purchasers of the CorTS Trust II certificates (*Azzolini* Court File No. 1, Doc.

No. 1), and, on July 7, 2003, Harriet Bernstein filed a similar lawsuit in the United States District

Court for the Eastern District of New York on behalf of purchasers of the CorTS Trust I certificates

(*Bernstein* Court File No. 1, Doc. No. 1). Pursuant to an order entered on October 6, 2003, the

JPML transferred these and a number of other putative securities fraud actions to this Court for

coordinated and/or consolidated pretrial proceedings. Following the conclusion of proceedings

before the JPML, the Court consolidated the *Azzolini* action with two other putative securities fraud

class actions brought by purchasers of CorTS Trust II certificates,[1] but elected not to consolidate

those actions with either the *Bernstein* action or the six actions consolidated into *In re*

*UnumProvident Corp. Securities Litigation* (*see Azzolini* Court File Nos. 9, 10). On March 19,

---

[1]The consolidated cases were *Finke v. CorTS Trust II for Provident Financing Trust I, et al.*,
No. 1:03-CV-1006, and *Strahle v. CorTS Trust II for Provident Financing Trust I, et al.*, No. 1:03-
CV-1007.

4

Case 1:03-cv-01003   Document 48   Filed 09/16/05   Page 4 of 26   PageID #: 424

2004, the Azzolini plaintiffs filed a consolidated amended complaint (*Azzolini* Court File No. 11, hereinafter "*Azzolini* Complaint") and Bernstein filed an amended complaint (*Bernstein* Court File No. 18, hereinafter "*Bernstein* Complaint").

The *Azzolini* plaintiffs seek to represent themselves and a putative class of "all persons who purchased the Unum-Backed Certificates during the Class Period (March 21, 2001 – March 24, 2003) and who were damaged thereby" (*Azzolini* Complaint at ¶ 196) asserting, *inter alia*, causes of action against Defendants SSB, SPC, and CorTS Trust II under §§ 11 and 15 of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. §§ 77a-77z (*id.* at ¶¶ 221-36).[2] The *Azzolni* complaint is 84 pages in length and contains 237 numbered paragraphs. It is organized and structured topically as follows: Nature of the Action (¶¶ 1-13); Jurisdiction and Venue (¶¶ 14-16); Parties (¶¶ 17-27); Substantive Allegations (¶¶ 28-43); UnumProvident's Misconduct (¶¶ 44-89); False and Misleading Statements During the Class Period (¶¶ 90-125); The Truth Emerges (¶¶ 126-43); UnumProvident Defendants' Scienter (¶¶ 144-60); Material Misrepresentations and Omissions in the CorTS II Prospectus (¶¶ 161-95); Class Action Allegations (¶¶ 196-201); Applicability of Presumption of Reliance: Fraud-on-the-Market Doctrine (¶¶ 202-03); No Safe Harbor (¶ 204); First Claim for Relief (¶¶ 205-16); Second Claim for Relief (¶¶ 217-20); Third Claim for Relief (¶¶ 221-36); and Prayer for Relief (¶ 237).

Bernstein seeks to represent herself and a putative class "consisting of all those who purchased or otherwise acquired CorTS Certificates pursuant or traceable to an initial public offering

---

[2]The *Azzolini* Complaint additionally asserts causes of action against Defendants UnumProvident, J. Harold Chandler, and Robert Greving under § 10(b) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5 promulgated thereunder and against Defendants Chandler and Greving under § 20(a) of the 1934 Act (*Azzolini* Complaint at ¶¶ 205-20). The Court has addressed these claims in a previous Memorandum and Order (*Azzolini* Court File Nos. 46, 47).

on or about January 31, 2001 through March 24, 2003, inclusive (the 'Class Period') and who were damaged thereby" (*Bernstein* Complaint at ¶ 34) asserting, *inter alia*, causes of action against Defendants SSB, SSB Holdings, SPC, and CorTS Trust I under § 11 of the 1933 Act (*id.* at ¶¶ 190-96), against Defendants SSB, SSB Holdings, SPC, and CorTS Trust I under § 12(a)(2) of the 1933 Act (*id.* at ¶¶ 197-201); and against Defendants Holdings, SPC, and CorTS Trust I under § 15 of the 1933 Act (*id.* at ¶¶ 202-04).[3] The *Bernstein* complaint is 89 pages in length and contains 219 numbered paragraphs. It is organized and structured topically as follows: Nature of the Action (¶¶ 1-15); Jurisdiction and Venue (¶¶ 16-19); Parties (¶¶ 20-33); Plaintiff's Class Action Allegations (¶¶ 34-39); Substantive Allegations: The CorTS I IPO (¶¶ 40-51); Substantive Allegations: UnumProvident's Fraud (¶¶ 52-139); Substantive Allegations: Scienter Allegations with Respect to Defendant UnumProvident (¶¶ 140-57); Substantive Allegations: Violations by SSB and SPC (¶¶ 158-89); Count I (¶¶ 190-96); Count II (¶¶ 197-201); Count III (¶¶ 202-04); Count IV (¶¶ 205-15); Count V (¶¶ 216-19); and Jury Trial Demanded.

The *Azzolini* and *Bernstein* complaints generally allege UnumProvident "issued and/or failed to correct false and misleading public statements and filings concerning the Company's financial performance during the Class Period" (*Azzolini* Complaint at ¶ 2; *Bernstein* Complaint at ¶ 2), specifically by "fail[ing] to disclose that the [company's] allegedly positive performance was the result of a pervasive and fraudulent scheme to deny and terminate expensive disability insurance claims" (*id.* at ¶ 6) and "fail[ing] to timely record losses on many of its below-investment-grade

---

[3]The *Bernstein* Complaint additionally asserts claims against Defendants UnumProvident, Chandler, and Greving under § 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and against Defendants Chandler and Greving under § 20(a) of the 1934 Act (*Bernstein* Complaint at ¶¶ 205-19).

6

securities" (*id.* at ¶ 8). Plaintiffs further allege the SSB Defendants disseminated prospectuses for the CorTS offerings which "contained material misstatements and omissions" (*id.* at ¶ 2), specifically in that they failed to disclose any information about the business and finances of UnumProvident, failed to disclose SSB had done due diligence on the company, and falsely represented SSB had done no due diligence when, in fact, it had (*Azzolini* Complaint at ¶¶ 11-13; *Bernstein* Complaint at ¶¶ 11-15). Both complaints detail the particular representations made in the respective prospectuses, why those representations were either false or misleading, and what information was not disclosed (*Azzolini* Complaint at ¶¶ 161-95; *Bernstein* Complaint at ¶¶ 158-89).

## II.    STANDARD OF REVIEW

At this early stage of the litigation, the Court is not called upon to determine the merits of the plaintiffs' cases, but simply to test the sufficiency of the allegations contained within their complaints. A motion to dismiss pursuant to Rule 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff, *Bloch v. Ribar,* 156 F.3d 673, 677 (6th Cir. 1998); *State of Ohio ex rel. Fisher v. Louis Trauth Dairy, Inc.*, 856 F. Supp. 1229, 1232 (S.D. Ohio 1994), accept all the complaint's factual allegations as true, *Bloch*, 156 F.3d at 677; *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 996 (6th Cir. 1994), and determine whether "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957); *see also Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001); *Coffey v. Chattanooga-Hamilton County Hosp. Auth.*, 932 F. Supp. 1023, 1024 (E.D. Tenn. 1996). The Court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Miller v.*

7

*Currie*, 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should neither weigh evidence nor evaluate the credibility of witnesses); *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). Rather, the Court must liberally construe the complaint in favor of the party opposing the motion and may dismiss the case only where no set of facts could be proved consistent with the allegations which would entitle the plaintiff to a recovery. *Hishon v. Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L. Ed. 2d 59 (1984); *Miller*, 50 F.3d at 377.

In deciding a motion to dismiss, the question is "not whether [the] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S. Ct. 992, 997, 152 L. Ed. 2d 1 (2002). However, bare assertions of legal conclusions are insufficient. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). The "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Id.* (emphasis in original).

The Court must ordinarily look to the four corners of the complaint. However, if documents are attached to, incorporated by, or specifically referred to in the complaint, they are considered part of the complaint and the Court may consider them. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997); *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). In addition, the Court may also consider matters outside the complaint of which it would be proper to take judicial notice. *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

8

## III.   DISCUSSION

The SSB Defendants seek dismissal of the various claims asserted against them in the *Azzolini* and *Bernstein* complaints. As detailed previously in **§ I**, the *Azzolini* and the *Bernstein* complaints assert claims against the SSB Defendants under §§ 11, 12(a)(2), and/or 15 of the 1933 Act based on allegedly misleading statements and omissions contained in the CorTS registration statements and prospectuses (*Azzolini* Complaint, Count III; *Bernstein* Complaint, Counts I, II & III). Section 11 provides purchasers of securities with a civil cause of action against a wide range of persons (including "every underwriter with respect to such security") where a registration statement "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Section 12(a)(2) imposes civil liability upon "any person who . . . offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . ." 15 U.S.C. § 77l. Section 15 extends §§ 11 and 12 liability to persons who control entities liable under those sections. 15 U.S.C. § 77o.

The SSB Defendants contend Plaintiffs' claims should be dismissed because:

(1) they have failed to allege any actionable misstatement or omission;

(2) their claims are barred by the statute of limitations;

(3) Defendant Holdings is not an entity against whom a § 11 claim may be asserted;

(4) purchasers of CorTS certificates in the aftermarket lack standing to bring the claims asserted; and

9

(5) Plaintiffs have failed to adequately allege a control person violation.

The Court will discuss each of these in turn. As stated above, the Court will **GRANT IN PART** and **DENY IN PART** the SSB Defendants' motion to dismiss (*Azzolini* Court File No. 19; *Bernstein* Court File No. 29).

###### A. Misstatements and/or Omissions

Plaintiffs' complaints cite exclusively to the CorTS II "Prospectus Supplements" disseminated by the Underwriter Defendants and claim this document was materially misleading in six primary ways:

(1) they stated all information in the prospectus was accurate and informed investors they should rely only on that information (*Azzolini* Complaint at ¶ 161);

(2) they failed to disclose "the circumstances under which the Underlying Unum Securities were originally offered in March 1998" (*Azzolini* Complaint at ¶¶ 164-66; *Bernstein* Complaint at ¶¶ 159-61);

(3) they disclosed only the underlying UnumProvident securities' current ratings and not their historical ratings (*Azzolini* Complaint at ¶ 167; *Bernstein* Complaint at ¶ 162); they failed to list the historical trading prices of the underlying securities (*Azzolini* Complaint at ¶ 168; *Bernstein* Complaint at ¶ 163);

(4) they failed to disclose either UnumProvident's historical, current, or projected future performance and financial condition (*Azzolini* Complaint at ¶¶ 171-72; *Bernstein* Complaint at ¶¶ 166-67);

(5) the Underwriter Defendants failed to comply with their duty to "make a reasonable and diligent investigation of all facts relevant to the offered Certificates" (*Azzolini* Complaint at

10

¶¶ 174-80; *Bernstein* Complaint at ¶¶ 169-75); and

(6) the prospectuses falsely represented the Underwriter Defendants had not "made any due diligence inquiry" (*Azzolini* Complaint at ¶¶ 181-84; *Bernstein* Complaint at ¶¶ 176-79).

The SSB Defendants contend these allegations are inadequate because they had no duty to disclose any of the information allegedly omitted from the CorTS prospectuses, they had no duty to conduct due diligence on UnumProvident, and none of the statements made in the prospectuses was false or misleading (SSB Memo, p.13-23). The securities laws do not impose an all-encompassing duty of disclosure with respect to all material information; rather, an affirmative duty to disclose arises only in certain circumstances such as where insider trading occurs, a statute specifically requires disclosure, or disclosure is necessary in order to avoid rendering a prior disclosure inaccurate, incomplete, or misleading. *See City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005); *see also Benzon v. Morgan Stanley Distribs., Inc.*, No. 3:03-0159, 2004 WL 62747, at *3-4 (M.D. Tenn. Jan. 8, 2004) (unpublished opinion). While Plaintiffs have listed certain general classes of information about UnumProvident which they claim would have been of interest and/or assistance to potential investors in CorTS certificates, nowhere have Plaintiffs identified the source of any affirmative legal duty on the part of the SSB Defendants to disclose that information in the CorTS prospectuses. In fact, there is legal authority to the contrary in the form of a no-action letter issued by the SEC. *See Morgan Stanley & Co., Inc.*, SEC No-Action Letter, 1996 WL 347869, at *4-5 (June 24, 1996), (stating filings regarding registered offerings of securities exchangeable for equity securities of an unaffiliated entity need not make complete disclosure regarding the issuer of underlying securities where "there is sufficient market interest and publicly available information regarding the issuer of the Underlying Securities,"

11

but need only make abbreviated disclosures including at least a brief discussion of the business of the issuer of the underlying securities, disclosure of the availability of information regarding issuer of underlying securities, and information concerning market price of underlying securities); *see also*, *Benzon v. Morgan Stanley Distrib., Inc.*, - - - F.3d - - -, 2005 WL 20000927, at \*11 (6th Cir. 2005) (finding that current SEC regulations "do not impose a disclosure obligation...[t]herefore, Defendants had no duty to disclose that information unless it was necessary to make another statement contained in the prospectus not misleading.") Generally speaking, "a defendant is not required to disclose a fact merely because a reasonable investor would like to know that fact." *In re Digital Island Securities Litigation*, 223 F. Supp. 2d 546, 552 (D. Del. 2002).

The Plaintiffs believe the "direct correlation between the [CorTS] Certificates and the performance of the underlying UnumProvident securities" created a duty on the SSB Defendants to disclose information about the finances and business of UnumProvident (*Bernstein* Court File No. 55, p. 5-6; *see also Azzolini* Court File No. 45, p. 13-14). The Court disagrees. Although the information about UnumProvident may have been material, the Plaintiffs simply had no duty to disclose such information. Therefore, those statements alleged by the Plaintiffs to be actionable omissions concerning the finances or business of UnumProvident, as a matter of law, are not actionable under §§ 11 or 12(a)(2).[4] *See City of Monroe Employees Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 669 (6th Cir. 2005) (stating "[i]n order to be actionable, a misrepresentation or omission must pertain to material information that the defendant had a *duty to disclose*...") (emphasis

---

[4] Although the Court does not believe the SSB Defendants had a duty to disclose material information regarding UnumProvident in its prospectuses, any information concerning the business practices and finances of UnumProvident necessary to correct a misleading statement about due diligence, as discussed below, would still be required.

12

added). The omissions that the SSB Defendants were under no duty to disclose, absent a need to clear up a misleading or false statement in the prospectus, are as follows: (1) "the circumstances under which the Underlying Unum Securities were originally offered in March 1998" (*Azzolini* Complaint at ¶¶ 164-66; *Bernstein* Complaint at ¶¶ 159-61); (2) UnumProvident's historical ratings and the historical trading prices of the underlying securities (*Azzolini* Complaint at ¶¶ 167-68; *Bernstein* Complaint at ¶¶ 162-63); and (3) UnumProvident's historical, current, or projected future performance and financial condition (*Azzolini* Complaint at ¶¶ 171-72; *Bernstein* Complaint at ¶¶ 166-67).

The Court's conclusion that the SSB Defendants had no duty to disclose information about the business and finances of UnumProvident does not, as Plaintiffs suggest, contravene the goals of the 1933 Act. The prospectus supplements warned potential investors that:

> None of the Depositor, the Underwriters or the Trustee has made, or will make, any investigation of the business condition, financial or otherwise, of the Underlying Issuer or UnumProvident Corporation, or verify any reports or information filed by the Underlying Issuer or UnumProvident Corporation with the Securities and Exchange Commission or otherwise made available to the public. It is *strongly recommended* that prospective investors in the Certificates *consider publicly available financial* and other information regarding...*UnumProvident* Corporation.

(*Azzolini* Court File No. 21, Apps. A, B, p. S-8; *Bernstein* Court File No. 31, Apps. A,B, p. S-8) (emphasis added). Potential investors in CorTS Certificates knew material information regarding UnumProvident was not being disclosed by the SSB Defendants and as a result they were taking on at least some added risk if they did not personally investigate UnumProvident's public filings before purchasing CorTS securities. *See In re WorldCom*, 303 F. Supp. 2d 385, 389-91 (S.D.N.Y. 2004) (dismissing a Section 11 complaint where the purchasers of GOALs securities, derivative securities of WorldCom that were issued by USB, were warned to "undertake such independent investigation

13

of WorldCom, Inc. as in your judgment is appropriate to make an informed decision with respect to an investment in GOALS" and where the plaintiffs failed to point to any misrepresentation made about WorldCom).

Despite the above conclusions, the Plaintiffs' §§ 11 and/or 12(a)(2) claims are not necessarily without merit. A plaintiff can make a Section 11 claim if he identifies either an untrue statement of material fact, or an omitted material fact necessary to make a statement not misleading. 15 U.S.C. § 77k. Plantiffs allege that the SSB Defendants made false and/or misleading statements in the prospectus supplement when (1) they stated all information in the prospectus was accurate and informed investors they should rely only on that information (*Azzolini* Complaint at ¶ 161, *Bernstein* Complaint at ¶ 12); and (2) the prospectuses falsely represented the Underwriter Defendants had not "made any due diligence inquiry" into UnumProvident (*Azzolini* Complaint at ¶¶ 181-84; *Bernstein* Complaint at ¶¶ 176-79).

The Plaintiffs point to the following paragraph in the prospectus supplement to show the SSB Defendants made a false and/or misleading statement:

> You should rely only on the information contained in this Prospectus Supplement or the accompanying Prospectus. Neither the Depositor nor the Underwriters have authorized any other person to provide you with different information. If anyone provides you with different or inconsistent information, you should not rely on it.... You should assume that the information appearing in this Prospectus Supplement or the accompanying Prospectus is accurate as of the date on their respective front covers only.

(*Azzolini* Complaint at ¶ 161; *see Bernstein* Complaint at ¶ 12). The Azzolini plaintiffs contend that the quoted portion of the prospectus supplement is false because the "[p]rospectus included only the most basic terms of the [CorTS] Certificates, [but] disclosed nothing about...Unum[Provident] and how its performance might affect the value of its securities, including derivative securities like the CorTS II Certificates" (*Azzolini* Court File No. 45, p. 6). In other words, the SSB Defendants told

14

investors *all* of the information a potential investor might need regarding the CorTS securities was in the prospectuses but important information that the SSB Defendants should have known about was not in the prospectuses. The Azzolini plaintiffs do not cite any cases where similar language has been held to constitute a misstatement and/or omission. Interestingly, this Court found similar language in other securities fraud cases, but did not find any cases where such language was found to be actionable or unactionable. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 346 F.Supp. 2d 628, 646 (S.D.N.Y. 2004) ("[y]ou should rely only on the information contained in or incorporated by reference into this prospectus"); *Eizenga v. Steward Enterprises, Inc.*, 124 F.Supp. 2d 967, 974 (E.D. La. 2000) ("[y]ou should rely only on information incorporated by reference or provided in this prospectus and any prospectus supplement. We have not authorized anyone else to provide you with different information"). With this framework in mind, and reading the prospectus as a whole, the Court concludes that no reasonable investor would find the above quoted section of the prospectus false and/or misleading. One underlying argument presented by the Plaintiffs is that the SSB Defendants should not be able to present a bare prospectus and then disclaim liability because it told investors to do their own research (*see Azzolini* Court File No. 45, p. 1-2). Yet, the Azzolini plaintiffs seem to ignore this argument when they contend that the above quoted paragraph is false and/or misleading. Read as whole, the prospectus clearly suggests to potential investors that information they may consider material is not in the prospectus and should be researched independently.

Taking up much more space in the litigants briefs is whether an actionable misstatement arose when the SSB Defendants made the following statements in the prospectus supplement:

> No Investigation of the Underlying Capital Securities, the Underlying Issuer or UnumProvident Corporation has been made by the Depositor, Underwriters or Trustee.

15

> None of the Depositor, the Underwriters or the Trustee has made, or will make, any
> investigation of the business condition, financial or otherwise, of the Underlying Issuer or
> Unum Provident Corporation, or verify any reports or information filed by the Underlying
> Issuer or UnumProvident Corporation with the Securities and Exchange Commission or
> otherwise made available to the public.

(*Azzolini* Court File No. 21, App. A, p. S-8; *Bernstein* Court File No. 31, App. A, p. S-8)

> This Prospectus Supplement does not provide information with respect to the Underlying
> Issuer or Unum Provident. No investigation has been made of the financial condition or
> creditworthiness of the Underlying Issuer or UnumProvident in connection with the issuance
> of the Certificates.

(*id.* at S-11)

> Although the Company has no reason to believe the information concerning the Underlying
> Capital Securities or the Underlying Issuer set forth in the Underlying Capital Securities or
> the Underlying Issuer set forth in the Underlying Capital Securities Prospectus or any report
> filed under the Exchange Act is not reliable, neither the Company nor any of the
> Underwriters has participated in the preparation of such documents, or made any due
> diligence inquiry with respect to the information provided therein.

(*id.* at S-12).

Plaintiffs allege the above statements are false and/or misleading because at the same time

the CorTS offering was being made, SSB was "conducting and/or completing substantial due

diligence as underwriter for [a] $575 million Note Offering for UnumProvident" (*see Azzolini*

Complaint ¶¶ 176-83; *Bernstein* Complaint at ¶¶ 171-79).

In response, the SSB Defendants argue that the due diligence statements have been taken out

of context and the Plaintiffs' allegations are conclusive (*see* SSB Memo, p. 21). Further, the SSB

Defendants contend that the due diligence statements simply point out that "no due diligence was

conducted in connection with information relating to the Underlying Securities – not Unum in

general or any other Unum offerings" (*id.* at 22). Stated differently, the SSB Defendants claim that

the statements regarding due diligence "only pertain[ed] to the CorTS Certificates and not to Unum

16

or the Underlying Certificates" (*id.*). Viewing the facts in the very best light possible for the Plaintiffs, the due diligence statements are sufficient to survive a motion to dismiss. Although the SSB Defendants made some qualification to the representations, the due diligence statements could be viewed as "'inaccurate, incomplete or misleading.'" *City of Monroe*, 399 F.3d at 369 (quoting *In re Digital Island Sec. Litig.*, 357 F.3d 322, 329 n.10 (3d Cir. 2004)). Granted that this is not the most plausible or logical reading, but the Court thinks a reasonable juror could find that the due diligence statements implied and/or represented that SSB had no information about UnumProvident and/or SSB had not ever made any inquiry into UnumProvident.[5] *See Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993) (stating "[a] complaint should not be dismissed for a failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (quotation omitted). Although the statements may have been innocently made, the Supreme Court has instructed that Section 11 "liability against the issuer of a security is virtually absolute, even for innocent misstatements." *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382 (1983). Thus, with regards to the due diligence statements, the Plaintiffs have properly pleaded actionable §§ 11 and/or 12(a)(2) misstatements and/or omissions.[6]

___

[5] The Court notes that the SSB Defendants did not raise the issue of materiality. Therefore the Court will not address whether the Defendants' failure to disclose its due diligence of UnumProvident in a separate transaction was material to CorTS investors.

[6] The SSB Defendants argue that SSB had no duty to conduct due diligence of UnumProvident with regards to the CorTS offerings (SSB Memo, p. 17-20). In light of the Court's conclusions, whether there was a duty to conduct due diligence or not seems immaterial. Assuming there was no duty to conduct due diligence, SSB did conduct due diligence of UnumProvident and possibly misled CorTS investors about conducting due diligence. *See In re Sirrom Capital Corp. Sec. Litig.*, 84 F.Supp. 2d 933 (M.D. Tenn. 1999) (stating when a defendant chooses to make an affirmative statement of fact, the defendant is bound to speak truthfully). Further, absent a false and/or misleading statement, what good would information gained by SSB during a due diligence investigation of UnumProvident do for the CorTS investors if SSB had no duty to disclose the

17

Since the Court concludes the due diligence statements may have been false or misleading to a reasonable investor, any material information necessary to make the statements not false and/or misleading should have been disclosed. Such necessary information would likely include SSB's due diligence investigation of UnumProvident on a concurrent or recent UnumProvident offering but it is unlikely that information regarding the business and finances of UnumProvident would also be *necessary*. Regardless, materiality was not raised in this motion so the Court simply determines that any material information necessary to clear up misleading due diligence statements, assuming they were misleading and/or false, should have been made by the SSB Defendants.

**B.**     **Statute of Limitations**

The SSB Defendants move to dismiss §§ 11 and/or 12(a)(2) claims against SPC and Holdings under the applicable statute of limitations. The statute of limitations for claims under §§ 11 and 12(a)(2) is one year after discovery of the untrue statement or omission is made or one year after discovery should have been made. *See* 15 U.S.C. § 77m. Further, § 77m has a three year statute of repose so that in no case can a Section 11 action be brought more than three years after the security was offered to the public or a Section 12(a)(2) action be brought more than three years after the security was sold. *Id.*

The SSB Defendants first argue that the Plaintiffs' claims were brought more than one year after the Plaintiffs were on inquiry notice of UnumProvident's alleged fraud (SSB Memo, p. 24). The SSB Defendants contend that the clock started to run on February 5, 2003 because on that date UnumProvident announced heavy investment losses in response to SEC requests for information (*id.* at 24-25) Alternatively, the SSB Defendants argue that the Plaintiffs were "indisputably on notice"

---

information and SSB chose not to disclose the information?

18

on March 11, 2003 when the price of CorTS Certificates fell in response to UnumProvident's losses (*id.* at 25). The initial *Azzolini* complaint was filed on May 8, 2003 and the initial *Bernstein* complaint was filed on July 7, 2003 (*Azzolini* Court File No. 1, Doc. No. 1; *Bernstein*, Court File No. 1, Doc. No. 1). Defendants Holdings and SPC were added on March 19, 2004, more than one year after both dates that Plaintiffs were allegedly on inquiry notice (*see Azzolini* Court File No. 11; *Bernstein*, Court File No. No. 18).

Assuming *arguendo* that the Plaintiffs were on inquiry notice by February 5th or March 11th, the statute of limitations will not bar claims against SPC or Holdings if the amended pleading "relates back," pursuant to Fed. R. Civ. P. 15(c), to the Plaintiffs' original pleadings. Rule 15(c) provides that a plaintiff may amend his complaint to change the party or the naming of the party against whom a claim is asserted and that amendment will relate back to the date of the original pleading if: (1) the claim asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, (2) the added party received notice of the suit in the 120 days following the filing of the original complaint, (3) the notice was such that the added party will not be prejudiced in maintaining a defense on the merits, and (4) the added party knew or should have known that but for a mistake of the identity of the proper party, the action would have been brought against her. Fed. R. Civ. P. 15(c)(3); *Moore v. City of Harriman*, 272 F.3d 769, 774 (6th Cir. 2001). The claims against SPC and Holdings arose from the same transaction and conduct and no prejudice is alleged by SPC or Holdings. Therefore, whether the amended complaint relates back to defeat the statute of limitations defense hinges on elements (2) and (4).

Plaintiffs argue SPC and Holdings must have had notice of the original suit because of the

19

"close affiliation and ownership of all of the defendants within the umbrella of Citigroup, Inc."

(*Azzolini* Court File 45, p. 22). The Fifth Circuit recognizes an "identity of interest" where business entities are "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998) (quotation omitted). Further, the Fifth Circuit has noted that an identity of interest is more likely to be found when entities share counsel. *See Id.*; *see also Richard v. Reed*, 883 F. Supp. 107, 110 n.7 (W.D. La. 1995) (citing Fifth Circuit and imputing notice when original and new corporate defendants were represented by the same counsel and one was a subsidiary of the other). The SSB Defendants have an identity of interest as defined by the Fifth Circuit. SSB is a subsidiary of Citigroup, as is Holdings. SPC is a subsidiary of Holdings and an affiliate of SSB. Further, SSB created Holdings who in turn created SPC to issue and sell CorTS securities. If these factors alone were not enough, SPC and Holdings have the same counsel as the original Defendants. Therefore, when the Plaintiffs gave notice to SSB and Citigroup, notice was given to SPC and Holdings.

For the amended complaint to relate back, the Plaintiffs must also show that the added party knew or should have known that but for a mistake of the identity of the proper party, the action would have been brought against them. Fed. R. Civ. P. 15(c)(3); *Moore*, 272 F.3d at 774. The Plaintiffs argue the failure to name SPC and Holdings was a mistake that resulted from "an inability to determine the responsible parties." (*Bernstein*, Court File No. 55, p. 19). To be clear, the Plaintiffs are not making a mistake of "law" argument. *See Black-Hosang v. Ohio Dept. of Pub. Safety*, No. 02-3152, 2004 WL 950066, at *3 (S.D. Ohio April 28, 2004) (unpublished opinion) (assuming, without deciding, that a legal mistake is the kind of "mistake" contemplated by § 15(c)(3)(B) in the

20

Sixth Circuit). Section 15(c)(3) allows a Plaintiff to correct a misnomer or misidentification, not to merely add or substitute new parties after the statute of limitations has run. *See Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 469 (2d Cir. 1995); *In re Kent Holland Die Casting & Plating, Inc.*, 928 F.2d 1448, 1449-50 (6th Cir. 1991). Here, the corporate relationships are complicated and the securities involved are not run of the mill securities. Further, once the parties sat down face to face, the mistaken identity was discovered and the Plaintiffs dropped Citigroup and added Holdings and SPC (*see Bernstein* Court File No. 55, p. 19). Thus, the Plaintiffs made a "mistake" under § 15(c)(3)(B). In addition, the interrelationship between the entities and the fact that SPC and Holdings share the same counsel as the original Defendants put SPC and Holdings on notice that but for the mistaken identity of the proper party, they would have been sued. Thus, the amended complaint relates back to the original complaint under Rule 15(c) and the one year statute of limitations does not bar the Plaintiffs' claims against SPC or Holdings.

In addition to making a one year statute of limitations argument, the SSB Defendants also argue that any claims against Holdings and SPC in the *Bernstein* complaint are barred under the three year statute of repose because the CorTS Certificates were purchased on January 31, 2001. (SSB Memo, p. 26). Since the amended complaint relates back to the original complaint, this argument also fails.

### C.     Is Holdings an Enumerated Party Under Section 11?

The SSB Defendants also move to dismiss the Bernstein Section 11 claim against Holdings arguing that Holdings is not an enumerated party under Section 11. (SSB Memo, p. 26). "A Section 11 action can be brought only against the issuer, its directors or partners, underwriters, and accountants who are named as having prepared or certified the registration statement." *Herman &*

21

*MacLean v. Huddleston*, 459 U.S. 375, 381 n. 13 (1983); 15 U.S.C. § 77k(a).[7] The Bernstein

Plaintiffs argue that Holdings is a parent company of SPC and therefore is an enumerated party

under Section 11 (*Bernstein*, Court File No. 55, p. 23). Similar to Holdings in the current case,

multiple holding companies made almost the same argument in *In re WorldCom Sec. Litig.*, 308 F.

Supp. 2d 338 (S.D.N.Y. 2004). In *In re WorldCom Sec. Litig.*, the holding company defendants

moved to dismiss because the plaintiffs alleged culpability based on their ownership or control, but

not based on their participation in the underwriting. *Id.* at 342. The court looked at the Securities

Act definition of underwriter and determined that "participation" in the underwriting process was

necessary for a party to be classified as an underwriter for purposes of Section 11. *See Id.* at 343-44.

As a result, the *In re WorldCom Sec. Litig.* court held that a Section 11 claim had not been properly

pleaded against the holding company defendants because the complaint did not allege the holding

company defendants had participated in the underwriting process. *Id.* at 344.

In the current case, Holdings is the parent company of SPC which, along with the CorTS

Trust, was an issuer of the CorTS securities. Therefore, unlike *In re WorldCom Sec. Litig.*, where

the question was whether the holding company defendant could be classified as an underwriter, the

issue here is whether Holdings can be classified as an issuer. The Securities Act defines an issuer

to mean "every person who issues or proposes to issue any security...." 15 U.S.C. § 77(b)(4).

Bernstein claims Holdings is an "issuer" under the 1933 Act, but she does not plead any facts, other

---

[7]Section 11 enumerates five classes against whom a claim may be asserted: (1) every person who signed the registration statement; (2) every person who was a director of (or person performing similar functions) or partner in the issuer ...; (3) every person who ... is named in the registration statement as being or about to become a director ... or partner; (4) every accountant ... who has with his consent been named as having prepared or certified any part of the registration statement...; (5) every underwriter with respect to such security. 15 U.S.C. 77k(a).

22

than the parent-subsidiary relationship, to show that Holdings issued or proposed to issue the CorTS securities (*See Bernstein* Complaint at ¶ 193). In addition, Bernstein does not cite any authority suggesting that a parent company is automatically an issuer under Section 11. The proposition that a parent company is an issuer solely because it is a parent company is against general principles of corporate law. *See In re WorldCom Sec. Litig.*, 308 F. Supp. 2d at 345 (stating "'[i]t is a general principal of corporate law deeply ingrained in our economic and legal systems that a parent corporation...is not liable for the acts of its subsidiaries'") (quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998)). Accordingly, the Court will dismiss Bernstein's Section 11 claim against Holdings.

### D. Aftermarket Purchasers

The SSB Defendants seek to dismiss any Section 12(a)(2) claims made by aftermarket purchasers against SPC, Holdings, or the CorTS Trusts (SSB Memo, p. 29-32). The Azzolini plaintiffs have not brought a Section 12(a)(2) claim against the SSB Defendants. However, Bernstein has made a Section 12(a)(2) claim against the SSB Defendants. Bernstein seeks to represent herself and a putative class "consisting of all those who purchased or otherwise acquired CorTS Certificates...and who were damaged thereby" (*Bernstein* Complaint at ¶ 34). Both parties agree that Bernstein is not an aftermarket purchaser. Therefore, the Court concludes it appropriate to reserve judgment on this issue until it becomes more clear that a claim has been sought against the SSB Defendants by aftermarket purchasers. The Court may rule on this issue when a motion for class certification has been made or at another appropriate time.

### E. Section 15 Control Person.

The SSB Defendants also move to dismiss Plaintiffs' Section 15 claims arguing there is no

23

underlying violation to support the claim and for a failure to plead control over a primary violator (SSB Memo, p. 32-35). Since this Court has already found a possible underlying violation under §§ 11 and 12(a)(2), it will not address that portion of the SSB Defendants' argument. Also, the Court will address the Azzolini and Bernstein Section 15 claims separately. The *Bernstein* complaint alleges that Holdings, SPC and CorTS were each controlling persons of the "Company" (*Bernstein* Complaint at ¶ 202-03). "Company" is defined as UnumProvident (*id.* at ¶ 2). Obviously, the underlying violator here is not UnumProvident, so the pleading clearly fails to state a Section 15 violation. In its opposition brief, Bernstein argues that the complaint actually says that Holdings controlled SPC and SSB[8] (*Bernstein* Court File No. 55, p. 27). That may very well be what Bernstein meant to say, but it is clearly not what Bernstein said. Therefore, the Bernstein complaint fails to adequately plead a Section 15 claim.

The Azzolini plaintiffs allege that SSB was a control person under Section 15 (*Azzolini* Complaint at ¶ 232-33). To state a claim for control person liability under Section 15, "the Plaintiffs, at a minimum, must plead facts to establish three essential elements: (1) a primary securities law violation; (2) power to control the specific transaction or activity upon which the primary violation is predicated; and (3) actual participation (i.e. exercise control) in the operations of the primary violator in general." *In re Prison Realty Securities Litigation*, 117 F. Supp. 2d 681, 692 (M.D. Tenn. 2000) (citing *Sanders Confectionary Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 486 (6th Cir. 1992). The Azzolini plaintiffs assert that SSB has power to control SPC and CorTS

---

[8] Without reaching a conclusion, the Court points out the obvious difficulty in believing Holdings controlled SSB. Further, although it is plausible that Holdings, the parent company of SPC, controlled SPC, a bare assertion of control without any facts is not good enough to survive a motion to dismiss.

24

Trust because SSB is an affiliate of SPC and SSB created SPC for the specific purpose of issuing and marketing CorTS securities. (*Azzolini* Complaint at ¶ 82). These allegations are conclusive in nature. A lthough S SB m ay b e affiliated w ith S PC, affiliation alone d oes n ot give the C ourt sufficient facts to meet the above standard. For these reasons, the Azzolini plaintiffs' Section 15 claim against SSB will be dismissed.

## IV.    LEAVE TO AMEND

In a footnote on the final page of the Azzolini plaintiffs' brief in opposition to the SSB Defendants' motion, the Azzolini plaintiffs request leave to amend their complaint "[i]f defendant's motion is granted"(*Azzolini* Court File No. 45, p. 24 n. 12). Similarly, on the last page of Bernstein's brief in opposition to the SSB Defendants' motion, Bernstein requests leave to amend "[i]f the Court finds any aspect of the pleading herein lacking" (*Bernstein* Court File No. 55, p. 27). These requests do not comply with the Court's local rules, which require a party seeking to amend a pleading to attach an original and one copy of the proposed amendment. *See* E.D. Tenn. LR 15.1. *See Begala v. PNC Bank, Ohio, Nat'l Ass'n*, 214 F.3d 776, 784 (6th Cir. 2000) (affirming denial of leave to amend because "[w]hat plaintiffs may have stated, almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is not [] a motion to amend). Assuming the requests can be treated as motions to amend, leave to amend is normally "freely given when justice so requires." Fed. R. Civ. P. 15(a). However, it is appropriate to deny leave to amend if the amendment would be futile. *Lucente v. Int'l Bus. Mach. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Here, leave to amend would be futile, except with respect to the Plaintiffs' Section 15 claims and Bernstein's Section 11 claim, as limited in this memorandum, against Holdings. Accordingly,

25

the Court will **GRANT IN PART** and **DENY IN PART** the Plaintiffs' requests for leave to amend.

## V. CONCLUSION

For the reasons stated herein, the Court will **GRANT IN PART** and **DENY IN PART** and **RESERVE RULING IN PART** the SSB Defendants' Motion to Dismiss Counts I, II and III of the *Bernstein* Amended Complaint and Count III of the *Azzolini* Amended Consolidated Complaint (*Azzolini* Court File No. 19; *Bernstein* Court File No. 29). Further, the Court will **GRANT IN PART** and **DENY IN PART** the Plaintiffs' requests for leave to amend.

An Order shall enter.


_____/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

26